**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
CALIFORNIA NATIVE PLANT SOCIETY, :
et al.,                          :
                                 :
        Plaintiffs,              :
                                 :
    v.                           : Civil Action No. 03-1540 (JR)
                                 :
GALE A. NORTON, Secretary of the :
Interior, et al.,                :
                                 :
        Defendants.              :
```

**<u>MEMORANDUM</u>**

Plaintiffs, five environmental groups, challenge the
process by which the Fish and Wildlife Service (FWS) handles
petitions for listing species under the Endangered Species Act
(ESA), 16 U.S.C. §§ 1531 <u>et seq</u>.  Specifically, plaintiffs object
to the treatment of the San Fernando Valley Spineflower
("Spineflower"), the listing of which has been deemed "warranted
but precluded" for a number of years.  For the reasons discussed
below, summary judgment -- declaratory judgment -- will be
granted to plaintiffs on their challenge to the sufficiency of
FWS's warranted but precluded findings; plaintiffs' claims of
inadequate monitoring of the spineflower will be dismissed for
failure to state a claim; and plaintiffs' challenge to FWS's use
of the Petition Management Guidance will be dismissed as moot.

## Background

### ESA listing processes

The ESA provides a number of protections for species that are listed as "endangered" or "threatened."  FWS is responsible for deciding whether or not a terrestrial plant, such as the Spineflower, is listed.[1]  The process for deciding which species get listed is established in 16 U.S.C. § 1533 (Section 4 of the ESA).

There are two ways for a species to be listed.  The first is the "candidate" process.  FWS, on its own, identifies species that meet the criteria for listing[2] and either proposes each one for listing[3] or puts it on a list of species for which listing is precluded due to higher priority work.  FWS then ranks these "candidate" species from 1 (highest priority) to 12 (lowest

---

[1] Listing decisions are divided between FWS and the National Marine Fisheries Service (NOAA Fisheries), which generally handles marine species.

[2] Factors to consider in determining if a species is endangered or threatened are:
> A) the present or threatened destruction, modification, or curtailment of its habitat or range;
> B) overutilization for commercial, recreational, scientific, or educational purposes;
> C) disease or predation;
> D) the inadequacy of existing regulatory mechanisms; or
> E) other natural or manmade factors affecting its continued existence

16 U.S.C. § 1533(a)(1).

[3] This process involves public notice and comment, with a final decision to generally occur within one year. 16 U.S.C. 1533(b)(5)-(6).

priority) based on three criteria (magnitude of threat, immediacy of threat, and taxonomic distinctiveness).[4]  A list of candidate species is published in the Federal Register in the Candidate Notice of Review (CNOR).  Additional information is available in candidate forms, which are available on the FWS Web site.  <u>See</u> FWS, Candidate Conservation Program Web Site, <u>available at</u> http://endangered.fws.gov/candidates/index.html.  Candidate species receive some limited protections, <u>see,e.g.</u>, 50 C.F.R. § 402.12(d) (FWS provides agencies with candidate species list during ESA consultation process for agency actions -- but candidate species explicitly not provided legal protection); 67 Fed. Reg. 40,658 (FWS encourages consideration of candidates in environmental planning), but they are not remotely comparable to the protections given to listed species. <u>See, e.g.</u>, 16 U.S.C. § 1538 (severe restrictions on destruction, sale, import, and possession of endangered species).

     The second way for a species to be listed is by public petition, which was intended by Congress to "interrupt[] [FWS's] priority system by requiring immediate review."  H.R. Rep. No. 95-1625, at 5 (1978), <u>reprinted in</u> 1978 U.S.C.C.A.N. 9453, 9455. Once FWS receives a petition for listing from an "interested person," it must determine within 90 days "to the maximum extent

---

     [4] Note that even a species with a rank of 12 is still sufficiently at risk to merit listing.

practicable" whether the petition presents "substantial scientific or commercial information" suggesting that the species should be listed.  16 U.S.C. § 1533(b)(3)(A).  If it does make such a finding, FWS must then determine, within 12 months of the filing of the petition, whether a listing is 1) warranted[5]; 2) not warranted; or 3) warranted but precluded. 16 U.S.C. § 1533(b)(3)(B).

In order to classify the listing of a species as warranted but precluded, FWS must find -- and publish its findings in the Federal Register -- that listing is "precluded by pending proposals to determine whether any species is an endangered species or a threatened species" and that "expeditious progress is being made to add qualified species" to the lists of endangered and/or threatened species and to remove species that are no longer qualified. 16 U.S.C. § 1533(b)(3)(B)(iii). Warranted but precluded decisions are subject to judicial review. 16 U.S.C. § 1533(b)(3)(C)(ii).  Additionally, FWS "shall implement a system to monitor effectively the status of all species [that are warranted but precluded] and shall make prompt use of [emergency listing] authority to prevent a significant risk to the well being of any such species."  16 U.S.C.

---

[5] In which case the species is proposed for listing.

§ 1533(b)(3)(C)(iii).[6]  New findings as to warranted but
precluded species must be made and published annually.  16 U.S.C.
1533(b)(3)(C)(I).  FWS has combined its findings on petitions
with the CNOR process, and it publishes one combined document for
both processes.[7]

**Spineflower history**

        The San Fernando Valley Spineflower is a small, white-
flowered annual found only in southwestern California.  For many
years, the Spineflower was believed to be extinct, with the last
recorded collection in 1929.  Then, in 1999, it was rediscovered
at the Ahmanson Ranch in Ventura County.  It was later discovered
in 2000 at the Newhall Ranch in Los Angeles County.  Both
sites -- the only two known locations of the Spineflower -- had
plans for extensive development.  In 1999, FWS placed the
Spineflower on its candidate list as a priority 3 (imminent
threats of high magnitude -- the highest priority it could have

_____

        [6] Emergency listing allows for immediate listing lasting 240
days. 16 U.S.C. § 1533(b)(7).

        [7] As discussed further below, this practical combining of
the two listing methods is in part challenged in this litigation.
Although FWS indicates that CNORs will be published annually,
their publication in fact is sporadic.  The last four CNORs were
published on: May 4, 2004 (although FWS calls this the "2003"
CNOR); June 13, 2002; October 30, 2001; October 25, 1999.
Counsel for defendant represented at oral argument that FWS
anticipates "hopefully" publishing the next CNOR by May of 2005.
2/18/05 Tr. at 48.  Although I do not believe that this issue is
squarely before me, FWS's failure to publish 12-month findings on
petitions at least every 12 months appears to be a clear
violation of 16 U.S.C. § 1533(b)(3)(B)-(C).

since it is a subspecies).  FWS considered emergency listing, but
chose not to pursue this route.  In December 1999, the City of
Calabasas, located near the Ahmanson Ranch, filed a petition for
listing.  Because the Spineflower was already on its candidate
list, FWS, following its Petition Management Guidance, did not
make 90-day or 12-month findings.

In October 2001, FWS issued a new CNOR.  To comply with
the Ninth Circuit's decision in Ctr. for Biological Diversity v.
Norton, 254 F.3d 833 (9th Cir. 2001) (CBD), FWS provided more
information than in previous CNOR's.  The 2001 CNOR described the
Spineflower's status; noted that the Spineflower was only found
in two locations, and was thus "vulnerable to naturally
occurring, random events," 66 Fed. Reg. 54,821; continued to list
the Spineflower as a priority 3 "[b]ecause of imminent threats of
a high magnitude," id.; and made a blanket finding that the
Spineflower -- together with all 36 of the other species
designated warranted but precluded -- would remain warranted but
precluded, 66 Fed. Reg. 54,815.  FWS explained that work on
listing these species had been, and would continue to be,
precluded by a great number of court-ordered listing activities,
court-approved settlement agreements, mandatory statutory
deadlines, and higher priority listings.  66 Fed. Reg. 54,815-16.
Many of these actions involved, not the listing of new species,
but the designation of critical habitats for species that had

been listed already.[8]  Id.  As for making expeditious progress,
FWS noted a number of listings in fiscal years 1999 and 2000 and
concluded that, "given the Service's limited budget for
implementing section 4 [of the ESA], these achievements
constitute expeditious progress."  66 Fed. Reg. 54,822.

The June 2002 CNOR painted a similar, if darker,
picture.  FWS described the Spineflower's situation, indicated
that more information was available on the Internet, and again
assigned the Spineflower a priority 3, noting this time that, "as
currently planned, it is likely that construction of proposed
development will extirpate the first population in Ventura
County.  It is unclear how the development in Los Angeles will
affect that population."  67 Fed. Reg. 40,670.  Despite this
bleak outlook, FWS again indicated that little progress was being
made on listing warranted but precluded species.  Again, FWS
recited that its past, ongoing, and anticipated listing activity
precluded work on these species and demonstrating expeditious
progress.  Many of these activities were again mandated by court
order or statute, and many again involved listing critical

_____

[8] "The Secretary . . . shall, concurrently with making a
determination . . . that a species is an endangered species or a
threatened species, designate any habitat of such species which
is then considered to be a critical habitat."  16 U.S.C.
§ 1533(a)(3)(A).  Whether a need for such designations justifies
a warranted but precluded finding for the listing of new species
is discussed in more detail below.

habitats of already listed species.[9]  There was simply no money in the budget to list the Spineflower.

By the time the May 2004 CNOR was issued, the situation had somewhat improved.  The State of California had acquired the Ahmanson Ranch property for conservation, so that "direct threats to the species from the former Ahmanson Ranch development plan have been eliminated."  69 Fed. Reg. 24,822.  Also, the owner of Newhall Ranch had approached FWS about entering into a Candidate Conservation Agreement, although no agreement had been reached, and planned development still had "the potential to cause the loss of most, if not all, of the remaining plants at that site."  Id.  FWS lowered the Spineflower's priority ranking from 3 to 6, "reflecting threats that are high but nonimmenent [sic]."  Id.  Once again, very limited progress had been made on listing warranted but precluded species.  Once again, past, ongoing, and

---

[9] Activities since the prior CNOR included: 21 court-ordered (or court-approved in settlement) proposed, reproposed and/or final critical habitat determinations affecting 417 species; 5 proposed listings; 7 final listings; 3 emergency listings; one 90-day finding; and 2 12-month petitions. 67 Fed. Reg. 40,664. Anticipated activities (apparently required by court order or statute) using up the remaining fiscal year 2002 and anticipated 2003 budget included: 10 proposed critical habitat actions affecting 24 species; 11 final critical habitat determinations affecting 168 species; 3 12-month petitions; 2 proposed listings; and 6 final listings.  67 Fed. Reg. 40,664-65.  Furthermore, FWS anticipated working on final listings for 6 additional species and proposed listings for 2 additional species.  67 Fed. Reg. 40,665.

anticipated activities[10] precluded the listing of most previously
warranted but precluded petitioned species.[11]   69 Fed. Reg.
24884.   This time, FWS provided more detailed information on its
budgeting process, concluding that "the bulk of the funds that
would be otherwise available for adding qualified species to the
list in FY 2003 and FY 2004 have been spent or will be spent on
complying with court orders and court-approved settlement

---

[10] These include "actions" (all bundled together as one
category, unlike in past years with breakdowns by category)in
fiscal year 2004 on 29 species and past actions including: final
listings for 14 species, proposed listings for 4 species,
withdrawal of proposed listings for 4 species, final
reclassification of one species, proposed reclassification for
one species, proposed delisting for one species, final delisting
for one species, proposed critical habitat listings for 13
species, and final critical habitat listings for 323 species.

[11] The CNOR appears to be internally inconsistent here.   On
the one hand, it seems to state that all previously warranted but
precluded species considered were still warranted but precluded:
> We reviewed the current status of and threats to the 42
> candidates and 5 listed species for which we have
> received a petition and for which we have found listing
> or reclassification from threatened to endangered to be
> warranted but precluded. This includes 43 candidate or
> listed species for which we previously have published
> findings. For 42 of these 43 species, we have
> incorporated any new information we have gathered since
> the prior finding (for black-tailed prairie dog, see
> below) and, as a result of this review, we made
> continued ``warranted-but-precluded'' 12-month findings
> on the petitions for these species.
69 Fed. Reg. 24884.   One the other hand, on the next page, FWS
takes credit for proposed listings for the "Gila Chub, Southwest
Alaska DPS of the northern sea otter, slickspot peppergrass, and
the California tiger salamander."   69 Fed. Reg. 24,885.   All four
of these species had pending petitions that were warranted but
precluded on the 2002 CNOR.   See 67 Fed. Reg. 40,673-77.

agreements to designate critical habitat and make petition
findings." 69 Fed. Reg. 24,885.

Construction at the Newhall Ranch is currently
scheduled to begin in 2006.  Def. Intervenor Newhall's Opp'n Mot.
Summ. J. at 5.  The Spineflower has been listed as a endangered
by the State of California since 2001.  FWS, Candidate Assessment
and Listing Priority Assignment Form,
http://ecos.fws.gov/docs/candforms_pdf/r8/choparfer.pdf (Apr. 5,
2004).  The state listing provides some security for the
Spineflower, but FWS has questioned the adequacy of state
protections.[12]  Id.  In 2003, Newhall Land and Farming Company
conveyed a permanent conservation easement over 64 acres to
protect the Spineflower and has taken a number of other steps to
protect and monitor the Spineflower.  Decl. of Mark Subbotin.
Discussions are ongoing between Newhall and FWS regarding a
possible Candidate Conservation Agreement to further protect the
Spineflower.  2/18/05 Tr. at 32.

---

[12] In 2002, "an investigation by [California Department of
Fish and Game] wardens discovered numerous remains of
[Spineflower] on the property in areas that had been graded in
preparation for an agave farm . . . . The District Attorney chose
not to pursue prosecution under CESA." FWS, Candidate Assessment
and Listing Priority Assignment Form,
http://ecos.fws.gov/docs/candforms_pdf/r8/choparfer.pdf (Apr. 5,
2004).

**The present action**

Plaintiffs, five environmental groups, filed this case in July of 2003.  They presented four claims under the ESA and Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq.:

> 1) The 2002 CNOR's warranted and precluded finding for the Spineflower was arbitrary, capricious, an abuse of discretion, and not in accordance with law;
>
> 2) Defendants violated the ESA and APA by failing to make 90-day findings on the City of Calabasas's petition to list the Spineflower;
>
> 3) Defendants violated the ESA and APA by failing to establish a system to monitor effectively the status of warranted but precluded species; and
>
> 4) Defendant's reliance on the Petition Management Guidance violates the ESA and APA.

I granted Newhall's motion to intervene as a defendant on January 12, 2004, and, on February 9, 2004, dismissed plaintiffs' second claim as barred by the doctrine of res judicata.  Presently before me are cross-motions for summary judgment on the remaining three claims.  A 4,807 page administrative record has been filed, along with hundreds of pages of additional materials from the parties.

## Analysis

### Legal standards

I must grant summary judgment if the moving party shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In order to prevail on a suit for judicial review of final agency action under the APA, a petitioner must demonstrate that the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  7 U.S.C. § 706(2)(A).  The standard is the same for review under the citizen suit provisions of the ESA, 16 U.S.C. 1540(g).  Fund for Animals v. Babbitt, 903 F.Supp. 96, 105 (D.D.C. 1995).  When dealing with scientific questions entrusted to agency expertise, as we are here, agency decisions are entitled to "great deference."  West Virginia v. EPA, 362 F.3d 861, 867 (D.C. Cir. 2004) (citation omitted).

### Plaintiffs' challenge to the warranted but precluded finding

For listings that are warranted but precluded, FWS must publish findings in the Federal Register, "together with a description and evaluation of the reasons and data on which the finding[s] [are] based" that:

> (I) the immediate proposal and timely promulgation of a final regulation implementing the petitioned action . . . is precluded by pending proposals to determine whether any species is an endangered species or a threatened species, and

- 12 -

(II) expeditious progress is being made to add
qualified species to either [the endangered or
threatened species lists] and to remove from such lists
species for which the protections of this chapter are
no longer necessary

16 U.S.C. 1533(b)(3)(B).  Plaintiffs' complaint and briefs seem
to present a direct challenge to FWS's finding keeping the
Spineflower in warranted but precluded status.  At oral argument,
however, counsel for plaintiffs indicated that the relief
plaintiffs are seeking is a declaration that FWS's findings under
16 U.S.C. 1533(b)(3)(B) were not sufficient to allow for judicial
review -- together with a remand to produce an explanation that
would be adequate to allow for substantive review.  See 2/18/05
Tr. at 10, 11, 42.

The administrative record only covers agency action
through June 2002 (when the 2002 CNOR was published).  The 2004
CNOR has been published, and it supersedes the 2002 CNOR, but
defendant concedes that the new CNOR has not mooted plaintiffs'
challenges to FWS's policies.  Fed. Def.'s Reply at 3-5.
Plaintiff makes three broad interwoven claims: 1) that the need
to designate critical habitats for listed species may not be used
to justify the preclusion of listing new species; 2) that FWS has
not demonstrated expeditious progress in listing candidate

species[13]; and 3) that FWS's warranted but precluded findings are not sufficiently detailed and specific.

      <u>1. May FWS consider critical habitat designations in its preclusion findings?</u>

      In the 2002 CNOR (as in the 2004 CNOR), FWS responded to the requirements of 16 U.S.C. 1533(b)(3)(B) by itemizing pending activities that precluded the listing of the Spineflower. <u>See</u> 67 Fed. Reg. 40,663-65 (2002 CNOR); 69 Fed. Reg. 24,884-85 (2004 CNOR).  Among these activities were both listing activities related to candidate species and critical habitat determinations (generally by court order or court-approved settlement[14]) for species which had already been listed.  <u>See</u> 67 Fed. Reg. 40,663-65 (2002 CNOR); 69 Fed. Reg. 24,884-85 (2004 CNOR).  However, the ESA requires that FWS's preclusion findings be based on "pending proposals to determine whether any species is an endangered species or a threatened species," and that FWS justify such findings by showing that "expeditious progress is being made to add qualified species" to the endangered and/or threatened species lists.  16 U.S.C. 1533(b)(3)(B)(iii).  This language is

---

[13] As discussed above, the specific substance of this claim is not before me.  Plaintiffs' more general concerns in this area are addressed in the sections that follow covering plaintiffs' other claims.

[14] Apparently, FWS had long had a policy of ignoring its obligation to make critical habitat designations in tandem with species listings, and so has been faced with a large backlog of designations required by court orders.  <u>See</u> <u>N.M. Cattle Growers Ass'n v. FWS</u>, 248 F.3d 1277, 1283 (10th Cir. 2001); 2/18/05 Tr. at 40.

plain enough, and it does not encompass activities related to species which have already been determined to be endangered or threatened.  For FWS to justify a finding of warranted but precluded by its work on critical habitat designations is thus "not in accordance with law."  7 U.S.C 706(2)(A).

Defendant's argument that species listings and critical habitat designations are both part of the same statutory scheme and must be considered together is not persuasive.  It is true that the ESA requires FWS "concurrently with making a determination . . . that a species is an endangered species or a threatened species, [to] designate any habitat of such species which is then considered to be a critical habitat," 16 U.S.C. 1533(a)(3)(A)(I); that the legislative history discusses a Congressional goal of "establishing virtually identical procedures for the listing and delisting of species and for the designation of critical habitat," H.R. Conf. Rep. No. 97-835, at 20 (1982), reprinted in 1982 U.S.C.C.A.N. 2860, 2861; and that Congress funds species listings and critical habitats together in the same limited appropriation with the same FWS staff working on both tasks, see 2/18/05 Tr. at 20-21, 46.  Listing decisions and critical habitat designations are legally distinct, however. Compare, e.g., 16 U.S.C. §§ 1533(b)(2) (rules and criteria for critical habitat designation) and 1533(b)(6)(C) (reasons justifying decision not to designate a critical habitat) with 16 U.S.C. §§ 1533(b)(3) (rules for listing decisions) and

- 15 -

1533(b)(6)(A) (rules for implementation of final listing decisions). Indeed, FWS will not be heard now to argue that habitat designation is really part of the listing process, after past failures that the courts are now having to correct. "The court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 842-43 (1984). If Congress wanted to permit the use of critical habitat designations as a valid justification for a preclusion finding, Congress could have done so. But it did not, and "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). Congress itself distinguished current listing activities from critical habitat designations for species that are already listed. As the 2004 CNOR points out, while Congress did allocate one single appropriation of $9,077,000 to include listing and habitat designations in fiscal year 2003, Congress also capped, at $6,000,000, the portion of that appropriation that could be used for designating habitats for already listed species. 69 Fed. Reg. 24,884.

For all of the above reasons, I find that compliance with 16 U.S.C. 1533(b)(3)(B) requires FWS to justify its preclusion findings, if it can, by reference to pending listing proceedings for unlisted species and to make its demonstration of

- 16 -

expeditious progress, if it can, by reference to <u>unlisted</u>
species.

          This requirement is not a semantic one.  Species that
are listed receive extensive protections under the ESA.  <u>See,</u>
<u>e.g.,</u> 16 U.S.C. § 1538.  Species that are not listed do not.
Critical habitat designations are important, but listing is the
gateway to the ESA.  Congress created the warranted but precluded
status while enacting amendments designed to "force action on
listing and delisting proposals"  H.R. Conf. Rep. No. 97-835, at
21 (1982), <u>reprinted in</u> 1982 U.S.C.C.A.N. 2860, 2862.  "[T]he
circumstances under which the Secretary may invoke that excuse
[of a species being warranted but precluded] . . . are narrowly
defined."  <u>CBD</u>, 254 F.3d at 838.  Congress saw judicial review as
an essential safeguard of its overall statutory scheme: "In cases
challenging the Secretary's claim of inability to propose an
otherwise warranted petitioned action, the court will, in
essence, be called on to separate justifications grounded in the
purposes of the act from the foot-dragging efforts of a
delinquent agency."  H.R. Conf. Rep. No. 97-835, at 22 (1982),
<u>reprinted in</u> 1982 U.S.C.C.A.N. 2860, 2863; <u>see</u> <u>CBD</u>, 254 F.3d at
838-39 (stressing importance of adequate preclusion findings for
judicial review); <u>see also</u> 16 U.S.C. § 1533(b)(3)(C)(ii)
(permitting judicial review of warranted but precluded findings).

2. Are FWS's preclusion findings sufficient?

Plaintiffs challenge, not necessarily the correctness of FWS's warranted but precluded finding (although correctness is far from conceded), but the sufficiency of FWS's finding.  They insist on findings that are more "detailed and specific," Pls.' Reply at 14; a "complete Administrative Procedure Act style justification" for FWS's findings, 2/18/05 Tr. at 11; and "an individualized finding that explains the specific reasons why listing a particular candidate species is precluded, and that offers some indication of the specific work that will have to be completed before the candidate is listed."  Pls.' Reply at 15. The basic complaint is that the current level of detail in the findings does not supply an adequate basis for judicial review, as required by the Ninth Circuit in CBD  While FWS's findings in the 2002 and 2004 CNORs are basically sufficient, some adjustments are necessary going forward.

The 2002 CNOR does not provide individual findings for each warranted but precluded listing.  Rather, it contains the following blanket statement:

> We find that the immediate issuance of a proposed rule and timely promulgation of a final rule for each [warranted but precluded listing] has, for the preceding 7 months been, and will over the next year, be precluded by higher priority listing actions. During the past 7 months, almost all of our listing budget has been needed to take various listing actions to comply with court orders and court-approved settlement agreements. . . . For the next year, the majority of our remaining listing budget for FY 2002, and our anticipated listing budget for FY 2003 based on the

> President's requested budget, will be needed to take
> listing actions to comply with court orders and
> court-approved settlement agreements. . . . Issuance of
> proposed listing rules for most of the candidates even
> with the highest listing priority numbers (i.e., 1, 2,
> or 3) will continue to be precluded next year due to
> completing actions required by court orders and
> court-approved settlement agreements, as well as the
> need to comply (or end noncompliance) with the
> unqualified statutory deadlines for making 12-month
> petition findings and final listing determinations on
> proposed rules. . . . If over the next year we can
> devote any resources to issuing proposed rules for the
> highest priority candidates without jeopardizing our
> ability to comply with court orders, court-approved
> settlement agreements, or unqualified statutory
> deadlines, we will do so. . . . Finally, work on
> proposed rules for candidates with lower priority
> (i.e., those that have listing priority numbers of
> 4-12) is also precluded by the need to issue proposed
> rules for higher priority species, particularly those
> facing high-magnitude, imminent threats (i.e., listing
> priority numbers of 1, 2, or 3).

67 Fed. Reg. 40,664-65.  The CNOR recites the critical habitat
listings and species listings that FWS has performed since the
last CNOR and that it anticipates working on in the coming year.
See id.  It provides a brief summary of the status of each
warranted but precluded species, and points to a Web site where
candidate forms are available that provide more detail.  See id.
It also provides a list of all candidate species, their priority
ranking (from 1 to 12), their historic range, and their current
status.  See 67 Fed. Reg. 40,672-78.

The 2004 CNOR is quite similar:

> We find that the immediate issuance of a proposed rule
> and timely promulgation of a final rule for each
> [warranted but precluded listing] has been, for the
> preceding months, and continues to be, precluded by
> higher priority listing actions. . . . [W]e may need to

- 19 -

make petition findings on most or all of the outstanding petitions for those species that we have not previously determined to warrant candidate status. If over the next year we can devote any resources to issuing proposed rules for the highest-priority candidates without jeopardizing our ability to comply with court orders, court-approved settlement agreements, or unqualified statutory deadlines, we will do so. . . . Work on proposed rules for candidates with lower priority (i.e., those that have listing priority numbers of 4-12) is also precluded by the need to issue proposed rules for higher-priority species facing high-magnitude, imminent threats (i.e., listing priority numbers of 1, 2, or 3).

69 Fed. Reg. 24,884-85.  Like the 2002 CNOR, this CNOR sets forth both the critical habitat listings and the species listings that FWS has performed since the last CNOR and that it anticipates working on in the coming year; provides a brief summary of the status of each warranted but precluded species; points to a Web site containing more candidate forms providing more detail; and provides a list of all candidate species, their priority ranking (from 1 to 12), their historic range, and their current status.  See 69 Fed. Reg. 24,884-85, 24,896-903.  FWS also provides far more detail about its budget than it did in 2002.  The 2004 CNOR explains that in fiscal year 2003, FWS was given a listing budget of $9,077,000, up to $6,000,000 of which could be spent on critical habitats designations for already-listed species -- leaving $3,077,000 for other activities.  69 Fed. Reg. 24,884.  FWS also described problems that it had in obtaining additional money for fiscal year 2004 -- problems which

led to a prediction of limited listing progress going forward.
69 Fed. Reg. 24,885.

Stripped to their essence, FWS's basic explanations for
why listing the Spineflower and other species was warranted but
precluded were that FWS had statutorily mandated deadlines,
court-ordered actions, higher priority listing activities, and a
very limited budget.  Despite protests from the plaintiffs, all
of these explanations are legitimate.

And plaintiffs' complaint about FWS's use of a blanket
explanation for its warranted but precluded findings blinks
reality.  The statute requires individual findings for each
warranted but precluded listing, see 16 U.S.C. 1533(b)(3)(B), but
it cannot require that an identical discussion of budgetary
constraints, statutory requirements, court-mandated listings, and
other higher priority listings be repeated 40 times in the
Federal Register.[15]

---

[15] Plaintiffs' reliance on CBD, 254 F.3d at 838-39; American
Lands Alliance v. Norton, No. 00-2339, 2003 WL 24027913, at *3
n.5 (D.D.C. May 13, 2003); and American Lands Alliance v. Norton,
242 F.Supp.2d 1, 17 n.15 (D.D.C. 2003) as holding to the contrary
is misplaced.  Those opinions cite favorably to a 1995 boreal
toad preclusion finding that specifically lists other species
whose listing precluded the listing of the toad.  See 60 Fed.
Reg. 15,283.  The first American Lands Alliance decision also
suggests, in dicta, that individualized findings might be
necessary.  However, all of those opinions relied on the fact
that at one point listing decisions were made by region, so a
blanket national explanation would not have been appropriate. See
Decl. of Elizabeth Stevens at ¶ 29.  Since 2000, these decisions
have been made nationally.  Id. ¶ 30.

In one respect, however, FWS has failed to explain its findings in sufficient detail to permit meaningful judicial review.  FWS must provide enough information to serve as a "basis to evaluate the Secretary's conclusion that immediate action is precluded by other more urgent matters."  CBD, 254 F.3d at 839.  At a base level, the ESA requires that FWS itemize pending species listings that preclude listing the Spineflower and describe the "reasons" (whatever they may be) why each of these species listings has a higher priority than the Spineflower and why actions on these species in toto "preclude" action on the Spineflower.  See generally Ctr. for Biological Diversity v. Norton, No. 03-1111, 2004 WL 1406325 (D. Or. June 21, 2004).  This information need not be detailed (at least not in the CNOR -- the Administrative Record if an actual case is brought is another question), but it must be present.  The 2002 and 2004 CNORs are hardly models of explanatory prose,[16] but, on judicial

---

[16] As one example, the 2004 CNOR notes "we are funding actions on the following species" without (as in the 2002 CNOR) describing what kind of actions are being funded. Compare 67 Fed. Reg. 40,663-65, 40,672 (2002 CNOR -- breaking actions down by proposed listing, final listing, and critical habitat designations), with 69 Fed. Reg. 24,883-85 (2004 CNOR -- no breakdown, not even by whether an action has already occurred -- or will occur later in the fiscal year -- and thus can actually be considered "pending").  As another example, the 2002 CNOR lists recent activity in two different places, with inconsistent numbers. Compare, e.g., 67 Fed. Reg. 40,664 (referring to 8 proposed listings since the last CNOR) with 67 Fed. Reg. 40,672 (referring to 10 proposed listings since the last CNOR).  As another example, the 2002 CNOR notes, "We reviewed the current status of and threats to the 35 species for which we have found the petitioned action to be warranted but precluded and have

review, I must "'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'"  <u>Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins.</u>, 463 U.S. 29, 43 (1983) (citation omitted).  The 2002 and 2004 CNORs provide almost all of the information that they must provide, even if it is not always clearly presented.  <u>See</u> <u>Ctr. for Biological Diversity v. Norton</u>, No. 03-1758, slip op. at 6, 13 (E.D. Cal. June 21, 2004) (applying <u>State Farm</u> to sub-optimal FWS warranted but precluded finding).  The important exception is cases in which the FWS has said that listing the Spineflower is precluded by listing species at the <u>same priority level</u> as the Spineflower.  In 2002, the Spineflower had a priority of 3 and was warranted but precluded.  However, FWS did state in the 2002 CNOR that it "must work in the next year on proposed rules for at least 2 high-priority species, the Salt Creek tiger beetle and the southwestern Alaska population of the northern sea otter." 67 Fed. Reg. 40,665.  Both of those species had the same priority of 3 as the Spineflower.  67 Fed. Reg. 40,673 (otter), 40,675 (beetle).  The CNOR does not explain why those species were

---

incorporated any new information we have gathered since the previous finding.  As a result of this review, we made continued warranted but precluded findings on the petitions for all 35 species."  67 Fed. Reg. 40,664.  This language states that all previously warranted but precluded species were still warranted but precluded, but FWS notes on the same page that emergency listing was made since the last CNOR for the Carson's Wandering Skipper.  <u>Id.</u>  Listing for this species was warranted but precluded on the previous (2001) CNOR.  66 Fed. Reg. 54,826.

listed before the Spineflower.  The litigation process has
revealed that they were of specific concern to their respective
regions and were listed using their regions' residual
administrative support funding.  See Decl. of Elizabeth Stevens
at ¶ 28; 2/18/05 Tr. at 22-25.  In 2004, the Spineflower had a
priority of 6 and was warranted but precluded.  The 2004 CNOR
mentions that FWS is "funding [an] action[]" on the Columbia
Basin distinct population segment of the greater sage grouse.  69
Fed. Reg. 24,885, 24,896.  Presumably the "action" is a listing
proposal, but the format of the CNOR makes it impossible to tell
what action is anticipated, and the CNOR offers no explanation as
to why the greater sage grouse will be listed and not the
Spineflower.  In light of the fact that a new CNOR will soon be
issued, it is enough to declare, as the accompanying order does,
that the 2002 and 2004 CNORs fail to comply with the ESA's
requirement that their findings be explained.  See Ctr. for
Biological Diversity v. Norton, No. 03-1111, 2004 WL 1406325, at
*7 (D. Or. June 21, 2004) (rejecting 2004 CNOR findings).

**Plaintiffs' failure to monitor claim**

The ESA requires FWS to implement -- the statutory
language is "shall implement" -- a "system to monitor effectively
the status of all species [that are warranted but precluded] and
shall make prompt use of [emergency listing] authority to prevent
a significant risk to the well being of any such species."  16
U.S.C. § 1533(b)(3)(C)(iii).  Plaintiffs bring their claim under

the citizen suit provision of the ESA,[17] 16 U.S.C. 1540(g)(1)(C),
which allows suits "against the Secretary where there is alleged
a failure of the Secretary to perform any act or duty under
section 1533 of this title which is not discretionary with the
Secretary."  Plaintiffs' basic assertion is that FWS failed in
its duty to implement an <u>effective</u> monitoring system.  Citizen
suit provisions such as this one are quite narrow, allowing only
for suits to force agencies to take purely ministerial actions,
such as following mandatory deadlines.  <u>See</u> <u>N.Y. Pub. Interest</u>
<u>Research Group v. Whitman</u>, 214 F. Supp. 2d 1, 3-4 (D.D.C. 2002)
(providing extensive analysis of nearly identical citizen suit
provision in the Clean Air Act).  The question is whether the
"shall implement" language of the statute permits the invocation
of the citizen suit provision.  The word "shall" of course
connotes a statutory command, but the word "effectively" renders
discretionary the details of how the command is executed.  The
ESA's citizen suit provisions are therefore inapplicable, and the
third count of the complaint states a claim as to which relief
cannot be granted.

Plaintiffs' argument that FWS has not implemented any
"system" at all, as the word is ordinarily understood, <u>see</u> Pls.'

---

[17] Plaintiffs' complaint and motion for summary judgment
appear to suggest both an ESA citizen suit and an APA claim.
Compl. at ¶ 76; Pls.' Mot. Summ. J. at 9-10, 23, their reply
makes it clear that they bring this suit solely under the ESA's
citizen suit provisions.  Pls.' Reply at 18-19.

Mot. Summ. J. at 24-27, is rejected.  There is ample evidence on the record of FWS monitoring activity.  See Fed. Def.'s Mot. Summ. J. at 35-40.

## Plaintiffs' Petition Management Guidance claim

Under the PMG, "a petition to list a candidate species is redundant and will be treated as a second petition."  A.R. at 1659.  This language would allow FWS to avoid making 90-day and 12-month findings in situations, like that of the Spineflower, where FWS happened to make the species a candidate before a petition was filed.  The PMG thus directly violates the ESA's clear requirement that these findings be made for all petitions. See 16 U.S.C. § 1533(b)(3).  In American Lands Alliance v. Norton, No. 00-2339 (D.D.C. June 2, 2004), Judge Walton declared this aspect of the PMG invalid and enjoined its application. Plaintiffs' PMG claim will accordingly be dismissed as moot.

* * *

An appropriate order accompanies this memorandum.

JAMES ROBERTSON
United States District Judge